UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-22241-CIV-ALTONAGA/O'Sullivan

**ALFRED PUCCI**, *et al.*,

    Plaintiffs,
v.

**CARNIVAL CORPORATION**, *et al.*,

    Defendants.
_____/

## **ORDER**

**THIS CAUSE** came before the Court on Defendant, Carnival Corporation's ("Carnival['s]") Motion to Dismiss Plaintiffs' Amended Complaint ("Carnival Motion") [ECF No. 29], filed August 27, 2015; and Defendant, Cruise Ship Excursions, Inc.'s ("CSE['s]") Motion to Dismiss Plaintiffs' Amended Complaint ("CSE Motion") [ECF No. 34], filed September 21, 2015. Plaintiffs, Alfred Pucci ("Alfred") and Michael W. Pucci ("Michael") (collectively, "Plaintiffs") filed a Response . . . ("Carnival Response") [ECF No. 35] to the Carnival Motion on September 24, 2015; Carnival filed a Reply . . . ("Carnival Reply") [ECF No. 39] on October 13, 2015. Plaintiffs filed a Response . . . ("CSE Response") [ECF No. 38] to the CSE Motion on October 8, 2015; CSE filed a Reply . . . ("CSE Reply") [ECF No. 42] on October 22, 2015. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

CASE NO. 15-22241-CIV-ALTONAGA/O'Sullivan

## I. BACKGROUND[1]

On August 17, 2014, Judith Pucci ("Judith") boarded Carnival's ship, *The Valor*, for a seven-night cruise from Puerto Rico to the Virgin Islands. (*See* Am. Compl. ¶ 12). She was traveling with her son, Michael, his wife, and their three children. (*See id.*). While aboard *The Valor*, on August 17 or 18, 2014, Judith inquired into participating in a snorkeling excursion promoted by Carnival and operated by CSE, called the Champagne Catamaran Sail and Snorkel ("Champagne Excursion"). (*See id.* ¶¶ 21–22). Carnival marketed, promoted, advertised, and sold shore excursions, including the Champagne Excursion, directly to passengers at excursion desks aboard *The Valor*, as well as on its website, brochures, and television system. (*See id.* ¶ 14). Carnival and CSE (collectively, "Defendants") contracted to offer the Champagne Excursion, and shared in the profits and losses associated with the excursion's success or failure. (*See id.* ¶ 19).

Carnival was informed Judith was not a good swimmer,[2] but Carnival employees, agents and/or personnel assured Judith the Champagne Excursion was safe and appropriate for her, despite her limited abilities and advanced age. (*See id.* ¶ 21). Carnival marketed the Champagne Excursion as an "easy" excursion. (*See id.*). Through its marketing and sales process, Carnival assured Judith and her family that booking a "Carnival shore excursion" ensured the highest safety standards were followed. (*Id.* ¶ 22). Consequently, Judith purchased a ticket for the Champagne Excursion. (*See id.* ¶ 14).

---

[1] When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[2] The Amended Complaint does not detail how Carnival was so informed, but a plain reading of the facts indicates Judith and/or her family told Carnival personnel this information. (*See* Am. Compl. ¶ 21).

2

On August 18, 2014, Judith boarded CSE's vessel, *The Adventuress*, to embark on the Champagne Excursion. (*See id.* ¶¶ 7, 46). The Champagne Excursion involved sailing in the U.S. Virgin Islands from St. Thomas to St. John, and snorkeling off Honeymoon Beach, which has been the site of several snorkeler and swimmer drownings. (*See id.* ¶¶ 19–20). Defendants knew or should have known the snorkeling portion of the Champagne Excursion was not appropriate for all passengers and posed an increased risk of injury and death to inexperienced passengers. (*See id.* ¶ 20).

Personnel aboard the Champagne Excursion encouraged and allowed Judith to enter the water without sufficient education, training, and instruction, despite her lack of snorkeling experience and limited swimming abilities. (*See id.* ¶ 23). Personnel never performed an in-water safety evaluation during the Champagne Excursion to ensure Judith could safely snorkel. (*See id.* ¶ 25). Defendants also failed to have sufficient personnel available or assigned to monitor the snorkeling participants, such as by looking out for, recognizing, and responding to dangers presented by the water conditions or the actions/inactions of snorkeling participants. (*See id.* ¶ 27). Personnel further failed to implement a "buddy system" for snorkeling; thus, Judith snorkeled alone without proper training or monitoring, and became separated from the other snorkelers. (*See id.* ¶¶ 24–26).

Eventually, personnel "aboard the excursion" noticed Judith floating face down near a reef, in an area inappropriate for snorkeling. (*Id.* ¶ 28). By the time Defendants' agents, servants, and/or employees responded to Judith's aid, she was unresponsive. (*See id.* ¶ 29). Personnel pulled Judith from the water and attempted resuscitation, but Judith passed away. (*See id.* ¶ 30). A subsequent autopsy determined drowning as the cause of death. (*See id.*).

Following Judith's death, Alfred (Judith's husband) and Michael filed this lawsuit against Defendants. (*See generally* Compl. [ECF No. 1]). In the Amended Complaint, Plaintiffs assert the following claims against Carnival: Negligence (Count I), Negligent Selection/Retention of Tour Operator (Count III), Negligence for Apparent Agency or Agency by Estoppel (Count IV), Negligent Misrepresentation (Count V), Fraudulent Misrepresentation (Count VI), and Joint Venture (Count VII). (*See generally* Am. Compl.). Plaintiffs also bring two claims against CSE: Negligence (Count II), and Joint Venture (Count VII). (*See generally id.*). Plaintiffs' negligence claims (Counts I and II) are predicated on a long list of actions and omissions by Defendants including: failing to warn Judith of the hazards associated with snorkeling for an inexperienced snorkeler, failing to provide Judith with adequate aquatic safety instructions, failing to supervise snorkelers, and failing to timely render aide to Judith. (*See id.* ¶¶ 39–49).

Plaintiffs' misrepresentation claims against Carnival (Counts V and VI) are based on Carnival's alleged misrepresentation to Judith the Champagne Excursion was "easy" and safe, despite her lack of experience and swimming ability. (*See id.* ¶¶ 63–70). Plaintiffs predicate their Joint Venture theory of liability (Count VII) on numerous facts, such as: (1) Defendants entered into an agreement, "whether by formal contract or through their subsequent and ongoing course of conduct" (*id.* ¶ 77), whereby Carnival sold tickets for the Champagne Excursion and CSE operated the excursion; (2) Defendants had joint and/or shared control over aspects of the joint venture; (3) Defendants had a joint proprietary and/or ownership interest in the Champagne Excursion; and (4) Defendants shared profits and losses sustained from the joint venture. (*See id.* ¶¶ 77–82).

Plaintiffs seek compensatory damages (including damages for Alfred's lost support and services, companionship and protection, and mental pain and suffering, and Michael's mental

4

pain and suffering), punitive damages, interest, and costs associated with bringing the action. (*See id.* ¶ 87). Defendants seek to dismiss all claims against them. (*See generally* Carnival Mot. & CSE Mot.).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 578 S. Ct. 1702 (2012).

### III. ANALYSIS[3]

Carnival argues Plaintiffs: (1) fail to state a claim for negligence because they inadequately allege Defendants had notice of a risk-creating condition that proximately caused Judith's death, and the dangers associated with natural bodies of water are open and obvious as a matter of law; (2) fail to state claims for misrepresentation because they do not plead with sufficient particularity; (3) cannot hold Defendants liable on a theory of joint venture because the agreement between Carnival and CSE states Defendants are not joint venturers; and (4) may not recover emotional damages because maritime law prohibits such recovery. (*See generally* Carnival Mot.). CSE similarly argues (1), (3), and (4); and additionally contends Plaintiffs fail to allege facts for which punitive damages may be awarded under maritime law. (*See generally* CSE Mot.).

#### A. Negligence Claims (Counts I and II)

To properly plead a negligence claim, a plaintiff must allege four elements: "a legal duty on the defendant to protect the plaintiff from particular injuries; (2) the defendant's breach of that duty; (3) the plaintiff's injury being actually and proximately caused by the breach; and (4) the plaintiff suffering actual harm from the injury." *Belik v. Carlson Travel Group, Inc.*, 864 F. Supp. 2d 1302, 1308 (S.D. Fla. 2011) (internal quotation marks and citation omitted).

Defendants owe their passengers a duty of "reasonable care under the circumstances." *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632 (1959) (holding "the

---

[3] Federal maritime law applies to this action. *See Gentry v. Carnival Corp.*, No. 11-21580-civ, 2011 WL 4737062, at *1 (S.D. Fla. Oct. 5, 2011) (explaining a claim is governed by the federal courts' admiralty jurisdiction when "(1) it occurs on navigable waters or is caused by a vessel on navigable waters, (2) the incident has a potentially disrupting impact on maritime commerce, and (3) the general character giving rise to the incident has a substantial relationship to traditional maritime activities" (citations omitted)). The parties generally agree federal maritime law applies; however, Plaintiffs argue the law of the U.S. Virgin Islands should apply to Plaintiffs' claim for emotional damages, as discussed *infra*. (*See* Carnival Resp. 12–13).

6

owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising reasonable care under the circumstances of each case" (alteration added)). In this regard, "a carrier with knowledge of a passenger's abnormal physical disability may have to do more under the reasonable care standard toward that passenger than it would toward a passenger with no physical disability." *Carroll v. Carnival Corp.*, No. 11-23372-CIV, 2013 WL 1857115, at *4 (S.D. Fla. May 2, 2013) (citing *S. Pac. Co. v. Buntin,* 94 P.2d 639, 641 (Ariz. 1939) (finding a railroad had no duty to the plaintiff because it did not know of the plaintiff's bad eyesight in dropping him off in a dimly lit station); *Sumpter v. Tamiami Trail Tours, Inc.,* 123 So. 2d 732, 733 (Fla. 2d DCA 1960) (affirming judgment for a bus line because it did not know an elderly passenger needed assistance to board the bus)).

A carrier's duty of reasonable care includes a duty to warn "of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit."[4] *Carlisle v. Ulysses Line, Ltd., S.A.,* 475 So. 2d 248, 251 (Fla. 3d DCA 1985). While Plaintiffs claim a laundry list of ways in which Defendants allegedly breached the duty of reasonable care (*see* Am. Compl. ¶¶ 41, 46), both Plaintiffs and Defendants focus their negligence arguments on the duty to warn (*see generally* Carnival Mot.; CSE Mot.; Carnival Resp.). Thus, the Court similarly directs its analysis to the duty to warn, and declines to address Plaintiffs' additional

---

[4] Carnival argues "its *only* duty under the applicable maritime law to passengers while they are off of the vessel is a duty to warn of conditions that it knew or should have known that the passenger would encounter while ashore." (Carnival Reply 3 (emphasis added)). This is a slight misstatement of the law. While generally the duty to warn is the most relevant duty regarding off-vessel excursions, a cruise ship might have additional obligations under the "reasonable care" standard, if, for example, there is an agency relationship between the cruise ship and the excursion operator. *See Nielsen v. MSC Crociere, S.A.*, No. 10-62548-CIV, 2011 WL 12882693, at *4–6 (S.D. Fla. June 24, 2011) (declining to dismiss a negligence claim against a cruise company where plaintiff's wife died during a scuba diving excursion, and plaintiff claimed the defendant cruise company owed numerous duties to his wife arising out of its relationship with the excursion operator; and noting "which alleged duties may ultimately apply to Defendants will depend on which theories of liability (*i.e.,* partnership, agency — actual or apparent, common carrier liability) that Plaintiff is able to prove").

alleged breaches in line-item fashion. *See Holguin v. Celebrity Cruises, Inc.*, No. 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010).

Defendants correctly assert the duty to warn requires, as a prerequisite to imposing liability, Defendants have actual or constructive notice of the condition that created the risk to the passenger. (*See* Carnival Mot. 5; CSE Mot. 4); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (finding the duty of care owed by a shipowner to its passengers is "ordinary reasonable care under the circumstances . . . which requires, as a prerequisite to imposing liability, that the carrier have actual or constructive notice of the risk-creating condition" (alteration added)); *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322 (S.D. Fla. 2011) (quoting same).

Plaintiffs attempt to argue actual or constructive notice is not required to hold Defendants liable, asserting the standard in *Keefe* does not apply here. (*See* Carnival Resp. 5–6; CSE Resp. 4–5). Plaintiffs contend *Keefe* is inapplicable because the opinion adds the following caveat (italicized at the end): "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires . . . that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land *and not clearly linked to nautical adventure*." *Keefe*, 867 F.2d at 1322 (emphasis and alteration added); (*see* Carnival Resp. 6). Plaintiffs rely on this qualification to argue notice is not a prerequisite for liability in cases involving accidents during a "nautical adventure," such as the snorkeling excursion at issue. (*See* Carnival Resp. 6).

Despite the "nautical adventure" language, courts have applied the *Keefe* notice standard in cases similar to the present one, where the passenger was participating in a shore excursion with a nautical component. *See*, *e.g.*, *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D.

8

Fla. 2006) (finding the plaintiff who was bitten by a snake during a river tubing excursion promoted by Carnival failed to establish Carnival had actual or constructive notice of the risk of snakes); *see also Joseph v. Carnival Corp.*, No. 11-20221-CIV, 2011 WL 3022555, at *3 (S.D. Fla. July 22, 2011) (dismissing case against plaintiff whose husband died in a parasailing accident during a Carnival cruise, finding the plaintiff failed to allege Carnival knew or had reason to know of the dangers of parasailing with a specific vendor). The *Keefe* standard applies, and Plaintiffs are required to allege Defendants had actual or constructive notice of the risk-creating condition.

Defendants argue Plaintiffs neither identify the risk-creating condition that proximately caused Judith's drowning, nor allege Defendants had actual or constructive notice of it. (*See* Carnival Reply 5; CSE Mot. 5–7). Carnival attempts to divert attention from a simple reading of the facts. Taking the allegations of the Amended Complaint as true, Plaintiffs claim: (1) Judith and/or her family informed Carnival representatives Judith was an inexperienced swimmer and of advanced age; (2) Carnival representatives assured her the Champagne Excursion was nonetheless a safe and appropriate activity for her; (3) upon receiving this information, Judith went snorkeling; and (4) Judith drowned while snorkeling. (*See generally* Am. Compl.). Based on this simple recitation, Plaintiffs have plausibly alleged Judith drowned due to her inexperience in swimming and her advanced age,[5] and Carnival had actual notice of both of these factors (*see id.* ¶ 21). Nonetheless, Carnival failed to warn Judith the activity might be

---

[5] As noted, Judith's autopsy determined drowning was the cause of death (as opposed to a heart attack, shark bite, lightning strike, or other potential nautical causes). (*See* Am. Compl. ¶ 30). Thus, this case is distinguishable from those where the plaintiff wholly failed to identify the cause of death. *See*, *e.g.*, *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1296298, at *2 (S.D. Fla. Mar. 27, 2013) (dismissing complaint where plaintiff merely stated an "accident" occurred, and failed to "state, even in a non-specific manner, what happened to [the decedent], nor what dangerous condition caused the accident" (alterations added)).

inappropriate for someone in her condition, or otherwise adequately train or supervise her (or instruct CSE to do so). (*See generally id.*). Thus, Plaintiffs have sufficiently alleged Carnival had actual notice of a risk-creating condition — Judith's limited swimming ability combined with her advanced age — and this condition proximately caused Judith's death.

Carnival's knowledge of Judith's limited swimming ability and advanced age does not elevate the standard of care it owed to Judith. Yet, Carnival may have had "to do more under the reasonable care standard toward [Judith] than it would toward a passenger with no physical disability," or other such restrictions. *Carroll*, 2013 WL 1857115, at *4 (alteration added). Carnival does not identify case law concerning this particular situation where a cruise company had actual notice one of its passengers was particularly at risk, and nonetheless failed to warn her about, or arguably enticed her into, engaging in an activity inappropriate for someone in her condition. Because of the unique facts of this case, dismissal of the negligence claim against Carnival (Count I) is inappropriate at this time. *See id.* at *4 ("In sum, whether a carrier is negligent, or not, depends on if it acted reasonably under the fact-driven circumstances of each case.").

While the Amended Complaint states Carnival had actual knowledge of Judith's limited swimming ability, it does not state similar facts for CSE. Plaintiffs merely allege: "Defendant *Carnival* was made aware of Judith Pucci's limited experience in water related activities and the fact that she was not a good swimmer, but she was assured by Defendant *Carnival's* employees, agents and/or personnel . . . that this excursion and the snorkeling activities was [sic] safe and appropriate for her despite her limited abilities and advanced age, despite indirect and direct knowledge to the contrary." (Am. Compl. ¶ 21 (alterations and emphasis added)). Because the Amended Complaint does not allege CSE had actual or constructive knowledge of Judith's

swimming ability, Plaintiffs have failed to establish CSE had a duty to warn Judith of the risks associated with snorkeling for an inexperienced or unskilled swimmer. *See Isbell*, 462 F. Supp. 2d at 1237. In the absence of this knowledge, Plaintiffs also fail to explain how the actions of CSE's personnel were otherwise unreasonable "under the circumstances." *Kermarec,* 358 U.S. at 632. As a result, the Court dismisses the negligence claim against CSE (Count II) without prejudice.

Because the Court finds dismissal of Count I is not warranted, it addresses briefly Carnival's additional argument regarding "open and obvious" dangers. (*See* Carnival Mot. 9–11). Carnival argues Count I should be dismissed because a cruise line has "no duty to warn of dangers that [are] of an obvious and apparent nature" (*id.* 9 (citing *Young v. Carnival Corp.*, No. 09-21949-cv-King, 2011 U.S. Dist. LEXIS 10899, at *11 (S.D. Fla. Feb. 4, 2011) (alteration added))); and "natural bodies of water have been repeatedly deemed, as a matter of law, open and obvious dangers" (*id.* 10 (quoting *Nyazie v. Kennedy*, No. Civ.A. 97-0120, 1998 WL 633984 (E.D. Pa. Aug. 24, 1998))). Carnival contends as the risk of drowning in a natural body of water is an open and obvious danger, it had no duty to warn Judith of this risk. (*See id.* 11).

The fact a complained-of danger is open and obvious is not a total bar to recovery. *See Belik*, 864 F. Supp. 2d at 1309 ("Even when a person engaging in a noncontact sport such as diving knows of an open and obvious danger, the person may still recover damages under the principles of comparative negligence if the elements of the tort have been proven." (internal quotation marks, citation, and alteration omitted)). Furthermore, some courts have found resolution of whether a danger is "open and obvious" is more appropriately decided after the factual record has been developed. *See Prokopenko v. Royal Caribbean Cruises Ltd.,* No. 10-20068-CIV-HUCK, 2010 WL 1524546, at *2 (S.D. Fla. Apr. 15, 2010) ("The open and obvious

question requires a context specific inquiry and necessitates development of the factual record before the Court can decide whether, as a matter of law, the danger was open and obvious." (internal citations omitted)); *see also Joseph*, 2011 WL 3022555, at *4 (quoting same).[6] Given the facts alleged, the Court declines to dismiss Plaintiffs' negligence claim based on an "open and obvious" theory.

### B. Other Negligence-Based Claims (Counts III and IV)

Carnival asserts the Court should dismiss Plaintiffs' claims for negligent selection/retention of the tour operator (Count III), negligence for apparent agency or agency by estoppel (Count IV), negligent misrepresentation (Count V), and joint venture (Count VII), as they are all predicated on an inadequate negligence theory of liability. (*See* Carnival Mot. 9). The Court addresses Counts V and VII separately *infra*. With respect to Counts III and IV, Plaintiffs have sufficiently pleaded a negligence claim — and in the absence of any other Count III or IV-specific arguments by Carnival — the Court declines to dismiss these claims at this time.

### C. Misrepresentation Claims (Counts V and VI)

Carnival argues the Court should dismiss Plaintiffs' negligent misrepresentation claim (Count V) and fraudulent misrepresentation claim (Count VI) because Plaintiffs fail to plead the

---

[6] *Balachander v. NCL (Bahamas) Ltd.*, cited by Carnival (*see* Carnival Mot. 11), is distinguishable. *See* 800 F. Supp. 2d 1196, 1203 (S.D. Fla. 2011), *abrogated on other grounds by Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The decedent in *Balachander* nearly drowned while swimming in a designated area during a stop on his cruise vacation, and later died of related complications. *See* 800 F. Supp. 2d at 1198. The court decided dismissal was appropriate because of the "open and obvious" nature of the risk of swimming in the ocean. *See id.* at 1203. The facts of *Balachander* did not indicate, as they do here, the decedent informed cruise personnel he was a poor swimmer before engaging in the activity, and cruise personnel assured or encouraged him to participate in the activity regardless of his ability. *See generally id.* Under the present facts, it is possible the danger of an inexperienced swimmer participating in the snorkeling portion of the Champagne Excursion was not open and obvious.

claims with particularity as required by Federal Rule of Civil Procedure 9(b). (*See id.* 11–14). Plaintiffs agree Rule 9(b) applies to their misrepresentation claims but insist the Amended Complaint pleads these claims with sufficient particularity. (*See* Carnival Resp. 8–9).

Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). A plaintiff must allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Holguin*, 2010 WL 1837808, at *2 (quoting *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001)).

Plaintiffs allege Carnival made the following misrepresentations to Judith: "a. Marketed The Excursion as 'easy' for all participants; and/or b. Assured her that The Excursion was safe and appropriate despite her lack of experience and swimming ability; and/or c. Advised her that booking a 'Carnival shore excursion' insured that you got the best excursion experience and that the highest safety standards were followed." (Am. Compl. ¶ 70). The Amended Complaint further states Carnival made these misrepresentations "directly through marketing materials and in specific conversations with its Valor excursion desk and cabin staff employees, agents, and servants" (*id.*); however, Plaintiffs fail to specify which misrepresentations were made in marketing materials, and which by employees (*see id.* ¶¶ 61–75). Plaintiffs also fail to identify what marketing materials in particular contained these misrepresentations, or when Judith viewed these materials. (*See id.*).

Under similar circumstances, courts have held plaintiffs failed to plead misrepresentation claims with sufficient particularly and dismissed the claims without prejudice to replead. *See Holguin*, 2010 WL 1837808, at *2 (dismissing negligent misrepresentation claim where plaintiffs failed to "identif[y] which statements were made in which documents, the time and place of each statement, and the defendant responsible for each statement" (alteration added)); *McLaren v. Celebrity Cruises, Inc.*, No. 11-23924-CIV, 2012 WL 1792632, at *10 (S.D. Fla. May 16, 2012) (dismissing negligent misrepresentation claim where the plaintiff failed to specify when she viewed the defendant's literature and web sites; when she heard the shore excursion talks; or when the defendant's employees allegedly made the misrepresentations).

Plaintiffs argue they adequately allege temporal specificity, explaining "the Amended Complaint alleges that the decedent embarked on August 17, 2014, and she died on August 18, 2014; so while not explicitly stated, the Amended Complaint is sufficient to put Carnival on notice as to exactly when the alleged misrepresentations occurred." (Carnival Resp. 8). Plaintiffs also assert "with respect to the marketing materials for the shore excursions which contained the misrepresentations, i.e. those utilized on the Valor vessel on August 17th and 18th of 2014, it would appear the Amended Complaint is sufficiently specific since Carnival can certainly access them." (*Id.* 8–9). Plaintiffs' arguments fail to persuade. *Gayou v. Celebrity Cruises, Inc.* is particularly instructive. *See* No. 11-23359-Civ, 2012 WL 2049431 (S.D. Fla. June 5, 2012). In that case, the court found merely saying the cruise company's alleged false statements were made "during the cruise, prior to arriving at each destination, or when [the plaintiff] visited the excursion desk does not satisfy Rule 9(b)." *Id.* at *7 (alterations and internal citations omitted) (alteration added).

As in *Gayou*, Plaintiffs must allege their misrepresentation claims with greater temporal precision to comply with Rule 9(b). Further, they should identify which misrepresentations were made by employees; which misrepresentations were made in marketing materials; and which marketing materials in particular contained these misrepresentations. *See Holguin*, 2010 WL 1837808, at *2; *McLaren*, 2012 WL 1792632, at *10.[7] Accordingly, Counts V and VI are dismissed without prejudice.

### D. Joint Venture Theory of Liability (Count VII)

While there is no cause of action for "Joint Venture," Plaintiffs' Count VII advances an alternative theory of negligence liability — namely, because Carnival and CSE were engaged in a joint venture, they are liable for each other's negligence. (*See* Am. Compl. ¶ 85). As the Court has dismissed the negligence claim against CSE (Count II) *supra*, the joint venture theory is now limited to whether CSE may be held liable for Carnival's negligence (Count I).

Defendants argue Plaintiffs' joint venture theory of liability (Count VII) must be dismissed because the Tour Operator Agreement ("Agreement") [ECF No. 29-2] between Carnival and CSE expressly states the parties are not joint venturers.[8] (*See* Carnival Mot. 14–16; CSE Mot. 9–11). Plaintiffs do not attach the Agreement to their Amended Complaint, but they refer to such an agreement between Carnival and CSE in their joint venture allegations. (*See* Am. Compl. ¶ 77 ("Defendant Carnival and Defendant CSE entered into an *agreement*, whether by formal contract or through their subsequent and ongoing course of conduct, whereby

---

[7] Plaintiffs are not necessarily required to identify the exact Carnival employee responsible for making the alleged oral misrepresentations. *See Weitz v. Celebrity Cruises, Inc.*, Nos. 10-20267-CIV, 10-20268-CIV, 2010 WL 1882127, at *1 n.1 (S.D. Fla. May 11, 2010).

[8] Under the section "Relationship of the Parties," the attached Agreement states: "Operator's relationship with Carnival during the term of this agreement shall be that of an Independent Contractor . . . Nothing related in this agreement shall be construed as constituting Operator and Carnival as partners, or as treating the relationships of . . . joint venturers between the parties hereto." (Agreement ¶ 11 (alterations added)).

15

Defendant Carnival would sell the [Champagne Excursion] to its passengers and Defendant CSE would provide personnel to operate the [Champagne Excursion]" (emphasis and alterations added))).

Defendants attach the Agreement to their Motions (*see* Carnival Mot. Ex. 2; CSE Mot. Ex. 1); and CSE attaches an affidavit by Judy Reeve, a director and shareholder of CSE who executed the Agreement (*see* Declaration of Judy Reeve [ECF No. 34-1]). Generally, courts do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). Nevertheless, courts may consider a document not attached to the complaint where: (1) the plaintiff's complaint refers to the document; (2) the document is central to the plaintiff's claim; (3) its contents are not in dispute; and (4) the defendant attaches the document to its motion to dismiss. *See id.*

Here, Plaintiffs clearly refer to the Agreement in their Amended Complaint. (*See* Am. Compl. ¶ 77). However, they argue the Agreement is not central to their Joint Venture theory of liability, because: (1) the allegations regarding joint venture are based either on the Agreement *or* "the subsequent and ongoing course of conduct" between Carnival and CSE (*id.*); and (2) in "situations involving tort claims, a contract is not deemed central or integral to the plaintiff's claims" (Carnival Resp. 10 (citing *Gentry v. Carnival Corp.*, No. 11-21580-CIV, 2011 WL 4737062, at *5–6 (S.D. Fla. Oct. 5, 2011))).

The case law is split on the issue of whether an agreement between a cruise ship company and an excursion operator may be sufficiently "central" to a plaintiff's joint venture theory of negligence, and thus should be considered on a motion to dismiss. *Compare Zapata*, 2013 WL 1296298, at *5–6 (finding the tour operator agreement stating there was no joint venture

16

relationship between the cruise line and excursion operator was central to plaintiff's joint venture claim, and dismissing the claim based on this language of the agreement), *with Ash v. Royal Caribbean Cruises Ltd.*, No. 13-20619-CIV, 2014 WL 6682514, at *8 (S.D. Fla. Nov. 25, 2014) (finding the "Tour Operator Agreement is not necessarily central to Plaintiffs' negligence-liability-by-way-of-joint-venture theory . . . while the Tour Operator Agreement specifically states that *it* does not constitute a joint venture, a subsequent course of conduct may have created such a joint venture agreement, and the Amended Complaint only references an 'agreement'" (emphasis in original) (alteration added)).

The facts of this case are more similar to *Ash* than *Zapata* and the other cases cited by Defendants, as here, Plaintiffs refer to "an agreement" entered into by Carnival and CSE *either* through a formal contract *or* "their subsequent and ongoing course of conduct." (Am. Compl. ¶ 77). The "more prudent course at this stage is to not depart from the common maxim that a court's review is limited to the four corners of the complaint." *Ash*, 2014 WL 6682514, at *9. In the absence of other compelling arguments by Defendants on this issue, the Court declines to dismiss Plaintiffs' joint venture theory.[9]

**E. Emotional Damages**

Defendants argue the emotional damages sought by Plaintiffs (*see* Am. Compl. ¶ 87) are not recoverable under general maritime law and should be dismissed (*see* Carnival Mot. 16–18; CSE Mot. 11–12). Preliminarily, the Court notes: "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to 'claims,' not to requests for a certain type of damages that are 'merely the relief demanded as part of a claim.'" *Option Wireless, Ltd. v. OpenPeak, Inc.*, No. 12-80165-CIV, 2012 WL 6045936, at *2 n.4 (S.D. Fla. Dec. 5, 2012) (alteration added) (quoting

---

[9] Because the Court declines to dismiss the joint venture theory at this time, it does not address Plaintiffs' arguments regarding the disputed authenticity of the attached Agreement. (*See* CSE Resp. 8).

*Hutchings v. Fed. Ins. Co.*, No. 6:08-cv-305-ORL-19KRS, 2008 WL 4186994, at *1 (M.D. Fla. Sept. 8, 2008)). Defendants' request is more appropriately considered as a motion to strike pursuant to Federal Rule of Civil Procedure 12(f), and the Court exercises its discretion to consider this portion of the motion to dismiss as a motion to strike on the same grounds. *Cf. id.* ("The Court does not exercise this authority, however, and construes the . . . motion as labeled." (alteration added)).

In response, Plaintiffs contend, for the first time, emotional damages are proper pursuant to the wrongful death statute of the U.S. Virgin Islands, which allows such damages. (*See* Carnival Resp. 12–13). They argue the Court should apply the law of the Virgin Islands with respect to this claim because the incident occurred within the territorial waters of St. John, U.S. Virgin Islands. (*See id.*). Nowhere in the Amended Complaint do Plaintiffs state a claim for wrongful death, either under the law of the Virgin Islands or otherwise. (*See generally* Am. Compl.). Plaintiffs also fail to state sufficient facts confirming the alleged negligent acts definitively occurred within the territorial waters of the Virgin Islands, i.e. within three nautical miles of the shore. (*See id.*); *see also Smith v. Carnival Corp.*, No. 07-23363-CIV, 2008 WL 2704459, at *1 (S.D. Fla. June 24, 2008) (noting the Death on the High Seas Act "generally governs wrongful death actions occurring at least three miles from United States coastline").

The Court will not consider a wrongful death claim until it has been plead. *See Seropian v. Wachovia Bank, N.A.*, No. 10-80397-CIV, 2010 WL 2949658, at *4 (S.D. Fla. July 26, 2010) ("Plaintiffs cannot . . . assert what is essentially a new cause of action, not previously pled, in a response to a motion to dismiss." (alteration added)). As Plaintiffs fail to identify any other basis for permitting emotional damages with respect to their claims, the Court strikes Plaintiffs' request for emotional damages.

**F. Punitive Damages**

CSE argues the Court should strike Plaintiffs' demand for punitive damages. (*See* CSE Mot. 12). Plaintiffs apparently forgot they alleged such damages (*see* Am. Compl. ¶ 88), while conceding seeking punitive damages "at this stage of the case would be premature." (CSE Resp. 1). As the parties agree punitive damages are inappropriately sought, the Court strikes Plaintiffs' request for punitive damages.

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Carnival Motion **[ECF No. 29]** and the CSE Motion **[ECF No. 34]** are **GRANTED in part** and **DENIED in part** as follows:

1. Plaintiffs' negligence claim against CSE (Count II) is **DISMISSED without prejudice**.

2. Plaintiffs' misrepresentation claims against Carnival (Counts V and VI) are **DISMISSED without prejudice**.

3. Defendants' requests to dismiss the remaining claims (Counts I, III, IV, and VII) are **DENIED**.

4. Plaintiffs' demands for emotional and punitive damages are **STRICKEN**.

5. Given the deadline for filing amended pleadings has long passed (*see* Scheduling Order [ECF No. 17]), Plaintiffs have only until **November 30, 2015** to file a second amended complaint. This deadline will not be extended.

CASE NO. 15-22241-CIV-ALTONAGA/O'Sullivan

**DONE AND ORDERED** in Miami, Florida, this 18th day of November, 2015.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record