UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-22241-CIV-ALTONAGA/O'Sullivan

**ALFRED PUCCI**, *et al.*,

    Plaintiffs,

v.

**CARNIVAL CORPORATION**, *et al.*,

    Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Cruise Ship Excursions, Inc.'s ("CSE['s]") Motion to Strike and/or Dismiss Plaintiffs' Prayer for Relief ("Motion") [ECF No. 50], filed on December 14, 2015. Plaintiffs, Alfred Pucci ("Alfred") and Michael W. Pucci ("Michael") (collectively, "Plaintiffs") filed a Response . . . ("Response") [ECF No. 52] on December 30, 2015; CSE filed a Reply . . . ("Reply") [ECF No. 53] on January 11, 2016. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

### I.  BACKGROUND

On August 17, 2014, Judith Pucci ("Judith") boarded a ship owned by Defendant, Carnival Corporation ("Carnival") named *The Valor*, for a seven-night cruise from Puerto Rico to the Virgin Islands. (*See* Second Amended Complaint ("SAC") [ECF No. 45] ¶ 12). She was traveling with her son, Michael, his wife, and their three children. (*See id.*). While aboard *The Valor*, on August 17 or 18, 2014, Judith inquired into participating in a snorkeling excursion promoted by Carnival and operated by CSE,[1] called the Champagne Catamaran Sail and Snorkel ("Champagne Excursion"). (*See id.* ¶¶ 14–15, 21).

---

[1] Carnival and CSE are collectively referred to as "Defendants."

Carnival was informed Judith was not a good swimmer,[2] but Carnival employees, agents and/or personnel assured Judith the Champagne Excursion was safe and appropriate for her, despite her limited abilities and advanced age. (*See id.* ¶ 21). On August 18, 2014, Judith boarded CSE's vessel, *The Adventuress*, to embark on the Champagne Excursion. (*See id.* ¶¶ 7, 43). The Champagne Excursion involved sailing in the U.S. Virgin Islands from St. Thomas to St. John, and snorkeling off Honeymoon Beach, which has been the site of several snorkeler and swimmer drownings. (*See id.* ¶¶ 19–20). Plaintiffs assert Defendants knew or should have known the snorkeling portion of the Champagne Excursion was not appropriate for all passengers and posed an increased risk of injury and death to inexperienced passengers. (*See id.* ¶ 20).

Personnel aboard the Champagne Excursion encouraged and allowed Judith to enter the water without sufficient education, training, and instruction, despite her lack of snorkeling experience and limited swimming abilities. (*See id.* ¶ 26). Plaintiffs claim Defendants failed to have sufficient personnel available or assigned to monitor the snorkeling participants, such as by looking out for, recognizing, and responding to dangers presented by the water conditions or the actions/inactions of snorkeling participants. (*See id.* ¶ 30). Personnel further failed to implement a "buddy system" for snorkeling; thus, Judith snorkeled alone without proper training or monitoring, and became separated from the other snorkelers. (*See id.* ¶¶ 29, 44).

Eventually, personnel "aboard the excursion" noticed Judith floating face down near a reef, in an area inappropriate for snorkeling. (*Id.* ¶ 31). By the time Defendants' agents, servants, and/or employees responded to Judith's aid, she was unresponsive. (*See id.* ¶ 32). Personnel pulled Judith from the water, took her ashore onto Honeymoon Beach, and attempted

---

[2] The Second Amended Complaint does not detail how Carnival was so informed, but a plain reading of the facts indicates Judith and/or her family gave Carnival personnel this information. (*See* SAC ¶ 21).

resuscitation, but Judith passed away. (*See id.* ¶ 33). A subsequent autopsy determined drowning as the cause of death. (*See id.*).

Following Judith's death, Alfred (Judith's husband) and Michael filed this lawsuit against Defendants. (*See generally* Compl. [ECF No. 1]). In the Second Amended Complaint, Plaintiffs bring two claims against CSE: (1) negligence, and (2) negligence for joint venture. (*See generally* SAC). Plaintiffs also seek damages under the Virgin Islands' wrongful death statute, 5 V.I.C. section 76, asserting Judith's death occurred in the territorial waters of the U.S. Virgin Islands. (*See id.* ¶ 94). In particular, Michael and Alfred both seek to recover for mental pain and suffering; and Alfred additionally seeks to recover the value of lost support, services, companionship, and protection. (*See id.*). In its Motion, CSE argues the Court should strike these requests for emotional damages. (*See generally* Mot.).

## II.   ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "[A] motion to strike is the appropriate mechanism to pursue removal of the prayer for . . . damages in the Complaint." *Hutchings v. Fed. Ins. Co.*, No. 6:08-CV-305-ORL-19KR, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (alterations added). CSE argues the Court should strike Plaintiffs' request for emotional damages under Rule 12(f) because: (1) these damages are not recoverable under general maritime law; (2) general maritime law takes precedence over state law (here, the law of the Virgin Islands) to the extent the two laws conflict; and (3) Plaintiffs cannot recover for "mental anguish" under general maritime law, because they do not satisfy the "zone of danger" test. (*See generally* Mot.). In response, Plaintiffs assert state remedies like those under the Virgin Islands wrongful-death statute apply to deaths within

territorial waters[3] and are not supplanted by general maritime law; and the "zone of danger" rule is irrelevant because Plaintiffs are not claiming negligent infliction of emotional distress. (*See generally* Resp.). The Court addresses these issues in turn.

### A. Emotional Damages Under General Maritime Law

CSE argues emotional damages — such as damages for mental pain, suffering, and loss of support — are prohibited under general maritime law. (*See* Mot. 3–4). The Court agrees with CSE general maritime law does not allow plaintiffs in a wrongful-death action brought on behalf of a nonseafarer,[4] such as Judith, to seek emotional damages. The case law surrounding this issue merits some explanation.

In *Moragne,* the Supreme Court created a wrongful death action under general maritime law for deaths occurring in state territorial waters, noting Congress had enacted legislation to cover some, but not all types of maritime wrongful deaths. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 408–09 (1970); s*ee also In re Amtrak*, 121 F.3d 1421, 1428 (11th Cir. 1997) (noting "*Moragne* . . . for the first time gave an admiralty common law right of action for wrongful death of non-seamen in state territorial waters" (alteration added)). Specifically, the Death on the High Seas Act, 46 U.S.C. section 761 *et seq.* ("DOHSA"), only created a wrongful death action for persons killed on the *high seas*; and the Jones Act, 46 U.S.C. section 688, only provided *seamen* a right of recovery against their employers for negligence resulting in injury or death. *See Tucker v. Fearn*, 333 F.3d 1216, 1219 (11th Cir. 2003). To promote

---

[3] Territorial waters are considered to commence within three miles of the shore; the "high seas" extend beyond the territorial waters. *See Smith v. Carnival Corp.*, No. 07-23363-CIV, 2008 WL 2704459, at *1 (S.D. Fla. June 24, 2008) (noting the Death on the High Seas Act "generally governs wrongful death actions occurring at least three miles from [the] United States coastline" (alteration added)).

[4] The Supreme Court defines "nonseafarers" as "persons who are neither seamen covered by the Jones Act, 46 U.S.C. App. § 688 (1988 ed.), nor longshore workers covered by the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*" *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 n.2 (1996).

uniformity, the *Moragne* Court created a general maritime wrongful death action applicable in all waters, including state territorial waters; however, it did not set forth the scope of remedies available in such an action. *See Moragne*, 398 U.S. at 401–02, 408. The *Moragne* Court purposefully declined to define the scope of this new cause of action, believing "final resolution should await further sifting through the lower courts in future litigation," and suggesting the lower courts look for guidance to the DOHSA and the "numerous state wrongful death acts," in dealing with "particular questions of the measure of damages." *Id.* at 408.

Subsequent court decisions have addressed the scope of remedies available for a wrongful death action under general maritime law. In *Sea-Land Services, Inc. v. Gaudet*, the Supreme Court held that mental anguish and grief are not compensable in a maritime wrongful-death action, but loss of society is compensable. *See* 414 U.S. 573, 585 n.17, 587–88 (1974). In *Miles*, the Supreme Court, looking to the Jones Act for policy guidance, limited *Gaudet* to its facts, holding longshoremen in territorial waters could recover damages for loss of society, but seamen could not. *See generally Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). In *Tucker*, however, the Eleventh Circuit expanded the *Miles* opinion, holding "nondependent survivors, such as [the plaintiff], of nonseamen, such as [the decedent] . . . cannot recover loss of society damages in a wrongful death action under general maritime law." 333 F.3d at 1221–22 (alterations added). Courts have also held loss-of-consortium claims are not recoverable under general maritime law. *See Albertelli v. NCL Corp., Ltd.*, No. 08-21418-CIV, 2008 WL 2949513, at *1 (S.D. Fla. July 29, 2008) ("A claim for loss of consortium is not permitted under general maritime law, and therefore must be dismissed"); *see also Gandhi v. Carnival Corp.*, No. 13-24509-CIV, 2014 WL 1028940, at *4 (S.D. Fla. Mar. 14, 2014) (collecting cases).

Plaintiffs argue in *Lobegeiger v. Celebrity Cruises, Inc.*, the Court found emotional (or "non-pecuniary") damages are available under maritime law. (*See* Resp. 8 (citing No. 11-21620-CIV, 2012 A.M.C. 202, 211 (S.D. Fla. Aug. 23, 2011) ("[I]t is incorrect to say that in maritime personal injury and death cases only pecuniary damages may be recovered." (alteration added)))). This portion of the *Lobegeiger* opinion came from a treatise — Robert Force and Martin J. Norris's *The Law of Maritime Personal Injuries* — which, read in its entirety, makes clear general maritime law provides non-pecuniary remedies for *personal injury* cases, but not necessarily for *wrongful death* cases:

> *Miles* was a death case. In personal injury cases in admiralty, whether under the Jones Act or under the general maritime law, an injured plaintiff may recover damages for a multitude of non-pecuniary factors under the heading of "pain and suffering." . . . All authorities agree that [non-pecuniary] damages are properly awarded in maritime *personal injury* cases. Therefore, it is incorrect to say that in maritime personal injury and death cases only pecuniary damages may be recovered. It is more accurate to say that in certain maritime *death* cases, only pecuniary damages may be awarded and that, in certain maritime *personal injury* cases, damages for loss of society may not be recovered. However, in maritime *personal injury* cases, damages may be recovered for pain and suffering.

Robert Force & Martin J. Norris, *The Law of Maritime Personal Injuries* § 11:8 (5th ed. 2010) (alterations and emphasis added).

As *Lobegeiger* was a personal injury case, the Court allowed the plaintiff to seek recovery for her pain and suffering, mental anguish and emotional distress. *See* 2012 A.M.C. at 212. It also is true courts have allowed parties to seek damages under general maritime law on behalf of the pain and suffering experienced by a decedent shortly before death. *See Complaint of Farrell Lines Inc., (S.S. African Neptune)*, 389 F. Supp. 194, 200 (S.D. Ga. 1975) ("Damages are recoverable under general maritime law for conscious pain and suffering of a decedent."). Here, however, Plaintiffs neither assert a personal injury claim, nor a pain-and-suffering claim on Judith's behalf. (*See generally* SAC). Rather, Plaintiffs seek damages for their own mental pain

and suffering, caused by the wrongful death of their loved one. (*See id.* ¶ 94). Plaintiffs provide no authorities supporting a claim of emotional damages under general maritime law under these circumstances.

### B.  General Maritime Law v. the Law of the Virgin Islands

While Plaintiffs cannot bring their claim for emotional damages pursuant to federal maritime law, they may do so under the law of the Virgin Islands. The Virgin Islands' wrongful death statute allows the spouse and children of a decedent to recover damages in the form of mental pain and suffering, and loss of support and services. *See* 5 V.I.C. §§ 76 (b)(1), (e)(1–4). The spouse may additionally recover damages for loss of companionship and protection. *See id.* § 76 (e)(2). CSE argues the Court must apply federal maritime law instead of the law of the Virgin Islands where the remedies provided by the two substantially conflict, in order to promote uniformity in maritime jurisprudence. (*See* Mot. 4). CSE relies heavily on the Eleventh Circuit's opinion in *In re Amtrak* for this contention, *see* 121 F.3d at 1425; while Plaintiffs rely on the Supreme Court's opinion in *Yamaha v. Calhoun* to counter that courts may apply state law remedies when the death occurs in a state's territorial waters, *see* 516 U.S. at 215–16. These two cases form the crux of the dispute.

In *Yamaha*, a young girl was killed in a collision in the territorial waters of Puerto Rico while riding a jet ski manufactured by the defendant. *See id.* at 201–02. Her parents sued, invoking Pennsylvania's wrongful-death and survival statutes,[5] seeking damages for, *inter alia*, loss of society and loss of support and services. *See id.* at 202. The defendant moved for partial summary judgment, arguing the federal maritime wrongful-death action the Supreme Court created in *Moragne* provided the exclusive basis for recovery, displacing all remedies afforded

---

[5] The Supreme Court noted the appellate court left for initial consideration by the district court the question whether Pennsylvania's wrongful-death remedies or Puerto Rico's applied. *See Yamaha*, 516 U.S. at 629 n.14.

7

by state law. *See id.* at 203. The Supreme Court disagreed, reasoning *Moragne* showed no hostility to the concurrent application of state wrongful-death statutes, and holding state statutes could still be applied to deaths within territorial waters. *See id.* at 214–16.

By contrast, in *In re Amtrak*, a commercial towing vehicle collided with a bridge in Alabama's territorial waters, causing a portion of the railroad track on the bridge to misalign. *See* 121 F.3d at 1422–23. Shortly thereafter, a passenger train derailed while traversing the bridge and tumbled into the water, where 47 passengers and/or train personnel perished. *See id.* at 1423. Relatives of the decedents commenced a number of wrongful death lawsuits, which were consolidated, and the district court found Alabama's wrongful death statute applied instead of general maritime law. *See id*. Relying on *Yamaha*, the district court assumed general maritime law must yield to state interests when the two conflict in state territorial waters. *See id.* at 1424. The Eleventh Circuit disagreed, stating "it would be wrong to assume . . . that the holding in *Yamaha* embodies an unspoken rule that state interests must always trump competing admiralty principles when the two collide in state territorial waters. It is plain from the language in *Yamaha* that more is at issue in these situations; conflicts of this type must be resolved with a healthy regard for the needs of a uniform maritime law." *Id.* at 1425 (alteration added).

Ultimately, the Eleventh Circuit held federal maritime law should apply in *In re Amtrak* because: (1) Alabama's wrongful death statute was particularly unique as it was the only state statute providing for punitive damages only; (2) the specific facts of the case implicated a variety of federal maritime interests not present in *Yamaha*, in that the case involved the collision of a commercial vessel with a railroad bridge, in the ordinary course of maritime business, on a waterway subject to heavy commercial traffic; and (3) Congress, in passing the Admiralty Extension Act, 46 U.S.C. section 740, made clear its intent that in situations involving a collision

between a vessel and a shore object, state laws should yield to federal maritime law. *See id.* at 1425–28. The Eleventh Circuit also distinguished *Yamaha* on the basis the Supreme Court did not address whether the Pennsylvania or Puerto Rico state statutes conflicted with any characteristic features of general maritime law, likely because these statutes were primarily remedial in nature. *See id.* at 1425 n.4.

On the face of these cases, *Yamaha* is clearly more applicable to the instant facts. Like *Yamaha*, the current case involves a nonseafarer who perished in the territorial waters of a state, while engaged in a recreational activity. No commercial activity was involved, nor federal statute directly implicated, unlike the situation in *In re Amtrak*. If anything, the one federal statute arguably at issue in the current case, the DOHSA, indicates state remedies should remain available to wrongful-death plaintiffs in territorial waters and should not be displaced by federal law. *See* 46 U.S.C. § 767 ("The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter.").

To the extent CSE asserts the Court should still apply federal law out of uniformity concerns because the remedies provided for in the Virgin Islands' wrongful-death statute substantially conflict with characteristic features of federal maritime law, this argument is ultimately unpersuasive. The Court acknowledges the test for determining when a state law unduly interferes with federal maritime law so as to warrant preemption is far from clear. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 452 (1994) ("It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernible in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence."). Indeed, a search for consistency in maritime cases on this issue is akin to Captain Ahab's search

for Moby Dick — mostly fruitless and occasionally destructive.[6] Still, from the watery depths of uncertain precedent, several principles emerge, which steer the Court toward allowing the law of the Virgin Islands to apply.

First, it appears the concerns for maritime-law uniformity are primarily implicated in commercial ventures. *See Kelly v. Bass Enters. Prod. Co.*, 17 F. Supp. 2d 591, 596 (E.D. La. 1998) ("From the earliest expressions of this uniformity concept by the Supreme Court in *The Lottawanna* . . . through the numerous maritime legislative enactments, . . . up to the most recent reference of the Court in *Yamaha Motor Corp., U.S.A. v. Calhoun*, . . . the desire for uniformity has been inextricably tied to the promotion of international and interstate maritime commerce." (alterations added)). Where nonseafarers are involved, maritime commerce interests are less paramount, and when these nonseafarers are injured in state territorial waters, maritime commerce concerns are even less impacted, and state interests outweigh the need for uniformity. *See id.*; *see also* Robert Force, *Post-Calhoun Remedies for Death and Injury in Maritime Cases: Uniformity, Whither Goest Thou?*, 21 TUL. MAR. L.J. 7, 38 (1996) ("There is a much stronger national interest in promoting uniformity where interstate and foreign commerce may be involved or affected compared to the recreational activities in which most nonseafarers are usually involved."). Because Judith was a nonseafarer, injured in state territorial waters, this principle steers in favor of applying state law in this case.

Second, the Supreme Court, in creating the general maritime wrongful-death remedy, showed no hostility to the concurrent application of state law, even though it undoubtedly recognized such application could create conflicts. *See Yamaha*, 516 U.S. at 214–16 (discussing

---

[6] In Herman Melville's *Moby Dick*, Captain Ahab is driven mad by his desire to find the whale that attacked his ship and caused him to lose a leg. The search for Moby Dick takes Ahab all around the world, until the whale ultimately attacks his ship again, killing Ahab and most of his crew. *See* Herman Melville, *Moby Dick* (Bantam Classics 1981) (1851).

*Moragne*). Indeed, the "humane and liberal purpose underlying the general maritime remedy of *Moragne* was driven by the idea that survivors of seamen killed in state territorial waters should not have been barred from recovery simply because the tort system of the particular state in which a seaman died did not incorporate special maritime doctrines. It is difficult to see how this purpose can be taken as an intent to preclude the operation of state laws that do supply a remedy." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622, 642 (3d Cir. 1994) (internal quotation marks omitted), *aff'd*, 516 U.S. 199 (1996). While some cases, like *In re Amtrak*, might still warrant a federal "trumping" of state law due to commercial concerns or overriding federal statutes, the instant facts do not present such a case. Accordingly, Plaintiffs may seek the emotional remedies provided for in the Virgin Islands' wrongful-death statute.

### C. Applicability of the "Zone of Danger" Rule

CSE also argues Plaintiffs cannot recover damages for "mental anguish" without meeting the "zone of danger" test. (*See* Mot. 6 (citing *Gandhi*, 2014 WL 1028940, at *3 (stating, within the context of a negligent infliction of emotional distress claim brought by a cruise ship passenger, "The [Eleventh] Circuit's adoption of the zone of danger test is consistent with its widespread acceptance by courts sitting in admiralty and the importance of fostering uniformity in admiralty law." (alteration added)))). Because the "zone of danger" test requires plaintiffs to be physically present during the traumatic incident, and Michael and Alfred were not physically present during Judith's drowning, CSE argues Plaintiffs cannot recover damages for mental anguish. (*See id.* 6–7).

Plaintiffs assert CSE's "zone of danger" argument is entirely irrelevant, as they are not bringing a claim for negligent infliction of emotional distress. (*See* Resp. 10). The Court agrees. Plaintiffs are seeking emotional damages under the Virgin Islands' wrongful death statute based

on their theories of negligence and misrepresentation, none of which include negligent infliction of emotional distress. (*See id.*; *see also* SAC). As Plaintiffs are not bringing such a claim, they do not need to satisfy its elements. Thus, the fact Plaintiffs were not physically within the zone of danger during the drowning incident does not preclude them from recovering emotional damages under the Virgin Islands' wrongful death statute. The Court also agrees with Plaintiffs *Gandhi* and *Smith*, cited by Defendants, are distinguishable, as in both cases, the plaintiffs actually asserted claims for negligent infliction of emotional distress. (*See* Mot. 6 (citing, respectively, 2014 WL 1028940, at *3 and 584 F. Supp. 2d 1343, 1353 (S.D. Fla. 2008))).[7]

### III.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 50]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 16th day of February, 2016.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[7] Further, CSE's reliance on *Fernandez v. Aliff*, while an interesting comparison, is unpersuasive. (*See* Reply 5 (citing 2008 A.M.C. 891, 2008 WL 2026010 (D.P.R. May 8, 2008))). There, the court rejected the plaintiffs' claim for mental pain and suffering under Puerto Rican law because: (1) the incident did not occur in territorial waters, thus general maritime law was applicable; and (2) general maritime law bars a party from recovering damages for emotional injuries where the party seeking recovery did not at least witness the accident that injured the victim. *See Fernandez*, 2008 A.M.C. at 894–97. The court noted even if the incident had occurred in territorial waters, federal law trumped Puerto Rican law because the two laws substantially conflicted on this issue. *See id.* at 897–899. Unlike here however, *Fernandez* did not involve a state wrongful-death statute, but rather a state equivalent for negligent infliction of emotional distress. *See id.* at 891–93. The *Fernandez* court argued the same outcome would apply in a wrongful death case (*see id.* at 899 n.6), but the Court disagrees. The cases cited by *Fernandez* on this point were either pre-*Yamaha*, or involved incidents covered by the DOHSA instead of state law. *See id.*